IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

JOSHUA ANTHONY MORGAN,

            Plaintiff,

v.                                    Civil Action No.
                                     6:17-CV-1020 (DEP)

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

           Defendant.

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

OLINSKY LAW OFFICE           HOWARD D. OLINSKY, ESQ.
300 S. State Street                MARISA BURKETT, ESQ.
Suite 420
Syracuse, NY 13202

FOR DEFENDANT:

HON. GRANT C. JAQUITH         JAMES DESIR, ESQ.
United States Attorney for the     Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Acting Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on May 10, 2018, during a telephone conference, held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Acting Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Acting Commissioner, with a directed finding of disability, for the purpose of calculating benefits owing to the plaintiff.

4) The clerk is directed to enter judgment, based upon this determination, remanding the matter to the Acting Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated: May 16, 2018
Syracuse, New York

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOSHUA ANTHONY MORGAN,,

                        Plaintiff,

vs.                                      6:17-CV-1020

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                        Defendant.

------------------------------------------------------x
```

*Decision* - May 10, 2018

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES, United States

Magistrate-Judge, Presiding


A P P E A R A N C E S (by telephone)

For Plaintiff:       OLINSKY LAW GROUP
                     Attorneys at Law
                     300 S. State Street
                     Syracuse, New York 13202
                       BY:  MARISA BURKETT, ESQ.

For Defendant:       SOCIAL SECURITY ADMINISTRATION
                     Office of General Counsel
                     26 Federal Plaza
                     New York, New York 10278
                       BY:  JAMES DESIR, ESQ.


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1    THE COURT:  I have before me a request for judicial
2 review of an adverse determination by the Acting Commissioner
3 pursuant to 42, United States Code, Sections 405(g) and
4 1383(c)(3).  The background is as follows.
5    The plaintiff was born in January of 1991 and is
6 currently 27 years old.  He is approximately 6-foot-1 in
7 height.  He has reported varying weights.  At page 1323 he
8 weighed 274 pounds; at 1305, 338 pounds; at 1366 and 780 of
9 the Administrative Transcript, 300 pounds.  But he suffers
10 from some degree of obesity is pretty clear.
11    He is right-hand dominant.  Plaintiff is married
12 and lives in a trailer in Blossvale, New York, with his wife
13 and two sons.  He dropped out of school in ninth grade.  He
14 was in behavioral school, according to one report at 1369.
15 He has achieved a GED.
16    Physically plaintiff suffers from some limiting
17 conditions, potentially including asthma, obesity, neck and
18 back pain, which was developed in 2015 or 2016.  For his back
19 and neck pain he is seeing Dr. Mitchell Rubinovich at the
20 Rome Orthopedics and Sports Medicine.  He also had at least
21 one appointment with the Central New York Spine and Wellness.
22 He suffers from bulging division but without any herniation.
23 He also suffers from bilateral carpal tunnel syndrome, but
24 has not undergone surgery.
25    The focus really of this case, though, is on

1  plaintiff's mental condition.  He was diagnosed at somewhere
2  between age 10 and 11 as an onset date with having severe
3  mental health issues.  That's at 779 and 1171 of the
4  Administrative Transcript.  There isn't any conflicting
5  evidence.  He appears to be properly diagnosed as suffering
6  from both bipolar disorder and intermittent explosive
7  disorder.
8         He has undergone significant treatment and some
9  inpatient hospitalization to address his issues.  The first
10 occurred in 2004.  He was hospitalized for 18 days in
11 Pinefield, which is a part of the Mohawk Valley Psychiatric
12 Center.  He was 13 years old.  That's reported at 308 to 326
13 of the Administrative Transcript.  That was as a result of
14 his efforts to strangle his mother.
15        At the time of admission he was assessed as having
16 a Global Assessment of Functioning, or GAF, of 40.  That's at
17 308.  He underwent another period of confinement in Pinefield
18 from March 19, 2007 to April 16, 2007 when he was 16 years
19 old.  And he was again assessed as having a GAF of 40 upon
20 admission.  That's at 206, I believe, of the Administrative
21 Transcript.
22        Plaintiff was hospitalized at the Rome Hospital in
23 August of 2010 for suicidal thoughts.  He was 19 years old at
24 the time.  I don't have access to those records because pages
25 909 to 1079 are missing from the Administrative Transcript

1   that was filed with the Court.  He underwent treatment at CNY
2   Services in March of 2013.  He was 22 years old.  That's at
3   771.  That involved a fight with his girlfriend and leading
4   police on a chase before he was subdued.
5           Plaintiff began treating with Dr. Vidya Patil in
6   May of 2013.  Dr. Patil has variously assessed plaintiff as
7   having a GAF of 50 in August of 2006.  That's at 186.  Also
8   50 on July 24, 2013.  That's at 781.  And a GAF of 55 in June
9   of 2013.  That's at 795 of the Administrative Transcript.
10          So he has been institutionalized, to summarize,
11  twice at Pinefield, once at the House of the Good Shepherd,
12  once at St. James Mercy Hospital, once at Ellis Hospital.
13  That appears at 258 and 1172 of the Administrative
14  Transcript.
15          As counsel recognized, there was a three-year gap
16  in plaintiff's mental health treatment from 2013 to 2016.
17  Part of that time he was out of state and was unable to make
18  contact with and secure a treatment provider.
19          Plaintiff has undergone treatment with Joanne
20  McPherson, LCSW-R, beginning in June of 2016.  On
21  September 22, 2016 he resumed treating with Dr. Patil.
22  That's at 1168 to 1169.  He was also hospitalized for a
23  suicide attempt in December of 2016.  That's at 1213.  And he
24  was sent to the St. Elizabeth Psychiatric Center.
25          And, lastly, he has treated with Nurse Practitioner

1  Psychiatric, I guess that's what NPP stands for, Patricia
2  Roach, beginning in January 2017.  That's at I believe 802.
3  He has been variously medicated with Latuda, Hydroxyzine,
4  Trazodone, Zyprexa, Cymbalta, Depakote, Wellbutrin and
5  Propranolol.  It's pretty clear from his records he suffers
6  from anger issues and difficulty in dealing with authority
7  figures.
8           According to the record, by age 22 he had been
9  fired -- he had had twenty different jobs and he was fired
10 fifteen times.  Most were of short duration and none rose to
11 a level of substantial gainful employment.  That's at 173 and
12 780.
13          Procedurally, plaintiff applied for childhood
14 disability benefits under Title II and Title XVI,
15 Supplemental Security Income payments, on February 5, 2009,
16 alleging an onset date of January 29, 1991.  The onset date
17 was later amended in June of 2017 to March 29, 2013, thereby
18 mooting the childhood disability claim because of plaintiff's
19 insured status.
20          On June 21, 2010 a hearing was conducted by
21 Administrative Law Judge John Ramos, who on September 8, 2010
22 issued a decision finding that the plaintiff was not disabled
23 at the relevant times.  On January 18, 2012 the Social
24 Security Administration Appeals Council denied plaintiff's
25 application for review of that decision.

1    Plaintiff commenced an action in this court, and on
2    September 28, 2012 the matter was remanded and a consent
3    judgment to that effect was entered.  On March 19, 2013 the
4    Social Security Administration Appeals Council issued an
5    order remanding the case based on the District Court's
6    decision.  On December 7, 2013, ALJ Ramos conducted a second
7    hearing, and subsequently he issued a decision on March 19,
8    2014, again finding plaintiff not to be disabled at the
9    relevant times.
10    The Social Security Administration Appeals Council
11    on August 5, 2015 issued a decision remanding the matter
12    again and directing that it be reassigned to a new
13    Administrative Law Judge.  Among the directives of the
14    Appeals Council, at 539, was the requirement that the ALJ
15    evaluate treating and non-treating source opinions, as
16    required under the regulations and applicable Social Security
17    rulings.  And they made the note, "As appropriate, the
18    Administrative Law Judge may request the treating and
19    non-treating sources to provide additional evidence and/or
20    further clarification of the opinions and medical source
21    statements about what the claimant can still do despite the
22    impairments."
23    On August 23, 2016 the hearing was conducted by
24    Administrative Law Judge Bruce Fein.  Judge Fein conducted a
25    second supplemental hearing on December 16, 2016.

1  Parenthetically, that is the same day that plaintiff was
2  hospitalized at Rome Memorial Hospital after a suicide
3  attempt.  A hearing was conducted with a vocational expert on
4  May 11, 2017.  On July 13, 2017 Administrative Law Judge Fein
5  issued a decision finding the plaintiff not to be disabled at
6  the relevant times.  Plaintiff did not seek review from the
7  Social Security Appeals Council, so that decision is a final
8  determination of the agency.
9          In his decision ALJ Fein applied the well-known
10 five-step sequential test for determining disability.  He
11 concluded that plaintiff had substantial gainful activity in
12 the third and fourth quarters of 2015 and the first quarter
13 of 2016.  He found, however, that there was a continuous
14 12-month period during which the claimant did not engage in
15 substantial gainful activities.
16         At step two plaintiff was found to have severe
17 impairments since the amended alleged onset date, including
18 bipolar I disorder; intermittent explosive disorder; as well
19 as asthma; cervical, thoracic and lumbar spine degenerative
20 disc disease.
21         At step three the Administrative Law Judge
22 considered but rejected a finding that plaintiff's conditions
23 met or medically equaled any of the listed presumptively
24 disabling conditions set forth in the Commissioner's
25 regulations, specifically considering 1.04, the listing for

asthma, which I would tell you what it is if I could read my writing, 12.04 and 12.08 dealing with plaintiff's medical condition.  He then concluded that plaintiff, despite his conditions, is capable of performing light work, except claimant can perform postural activities occasionally; rotate, flex, extend the neck occasionally; and should avoid concentrated exposure to respiratory irritants such as fumes, odors, dusts, gases, and poorly ventilated areas.

　　　　The claimant, according to the Administrative Law Judge, is further limited to simple, routine, repetitive tasks in a low stress job defined as occasional decision-making, occasional changes in the work setting, and occasional exercise of judgment.

　　　　The ALJ goes on to specify that the plaintiff cannot have any interaction with the public and co-workers and can occasionally interact with supervisors.  Based on that RFC the Administrative Law Judge concluded that plaintiff is unable to perform his past relevant work, and because he didn't have any significant past relevant work.

　　　　At step five he concluded that because of the erosion that plaintiff's non-exertional limitations would cause to the job base on which the medical-vocational guidelines, or Grids, are predicated, that he would have to elicit and did elicit testimony of a vocational expert and based on that testimony concluded that if plaintiff is able

1   to perform light work with the additional limitations
2   specified, he could work as a garment sorter, a warehouse
3   checker, and laundry worker, and that there were jobs of
4   sufficient numbers in the economy that plaintiff could
5   occupy.  And, therefore, plaintiff is not disabled.
6          As you know, my task is limited.  I must determine
7   whether correct legal principles were applied and the
8   determination is supported by substantial evidence.
9   Substantial evidence is such evidence that a reasonable mind
10  would accept to support the conclusion reached.
11         In this case treating source is the primary issue,
12  and specifically whether the opinion of Dr. Patil from August
13  of 2013 was properly rejected.  I note, parenthetically, that
14  I agree with the defendant that -- or what I think the
15  defendant is arguing, that the RFC, and particularly the last
16  sentence of the RFC, could be viewed as not inconsistent with
17  the part M of Dr. Patil's opinion at page 801, where he says
18  that plaintiff is unable to meet competitive standards in
19  terms of getting along with co-workers or peers without
20  unduly distracting them or exhibiting behavior extremes.
21  However, the RFC is clearly not consistent with the opinion
22  that plaintiff is unable to meet competitive standards when
23  it comes to complete a normal workday and workweek without
24  interruptions from psychological based symptoms.  And that is
25  consistent also with NPP Roach's opinion from April 27, 2017.

1  And that's at page 1246 to 1249.
2          I recognize that at the time she was not an
3  acceptable medical source.  It's also inconsistent with
4  Dr. Patil's opinion that plaintiff would be off task more
5  than 20 percent of the time and absent more than four days
6  per month, which I think everyone would agree would be
7  inconsistent with gainful employment and competitive
8  employment.
9          In terms of rejecting Dr. Patil, as you know, the
10 opinion of a treating source normally is entitled to
11 controlling weight.  It is certainly not controlling if it is
12 contrary to substantial evidence in the record, including
13 opinions of other medical experts.  It doesn't appear to be
14 contradicted by other opinions of medical experts.  And if
15 the ALJ does not give controlling weight to a treating
16 source's opinion, the ALJ must consider various factors under
17 the regulations, including the length of treatment
18 relationship, frequency of examination, nature and extent of
19 the treatment relationship, the evidence supporting the
20 treating provider's opinion, the degree of consistency
21 between the opinion and the record as a whole, whether the
22 opinion is given by a specialist, and other evidence that has
23 been brought to the attention of the ALJ.
24         And while I recognize the Second Circuit has said
25 that the ALJ need not slavishly go through each of those

1   factors, there still must be enough in the record to permit
2   meaningful judicial review.  Dr. Patil's opinions are wholly
3   consistent with Nurse Practitioner Roach.  In my view the ALJ
4   did not consider plaintiff's history.  And, in fact, at
5   page 459 I think specifically stated he did not.  His
6   conditions have been consistent and go back to when he was 10
7   or 11.  I think you can't ignore the longitudinal history of
8   his condition; the ongoing hospitalizations over time.
9           Dr. Patil is clearly a specialist.  The notes of
10  the treatment are I think supportive of Dr. Patil's opinions
11  and the fluctuations are entirely consistent with bipolar
12  disorder and intermittent explosive disorder, so one might
13  expect that there would be good days and bad days reflected
14  in the treatment notes.
15          The ALJ considered the work efforts against
16  plaintiff.  I agree with plaintiff that the work efforts and
17  careful consideration of his history show just the opposite.
18  He is not employable.  He is incapable of dealing with
19  authority.  I think he deserves credit for trying, but it's
20  clear that he has been unsuccessful in holding down a job and
21  coexisting with his co-workers and supervisors.  He is
22  incapable of dealing with authority, people of authority.
23  Dr. Patil said that at page 780.  Nurse Practitioner Roach
24  said that at 1181.
25          I also note the GAF scores have been consistently

1  low.  GAF score, which is no longer in effect as of the
2  revision of the DSM-5, but under the DSM-4 the GAF scale
3  considers psychological, social and occupational functioning
4  on a hypothetical continuum of mental health.  And while I
5  agree that the GAF score might not be the be-all and end-all,
6  there are cases that demonstrate that it is clearly relevant,
7  a relevant consideration.
8         Plaintiff has consistently scored in the 40 to 55
9  range.  At 40 plaintiff would show some impairment in reality
10 testing or communication, or major impairment in several
11 areas such as work or school, family relations, judgment,
12 thinking or mood.  41 to 50 is serious impairment in social,
13 occupational, or school functioning, or serious symptoms such
14 as suicidal ideation.  55 improves that to moderate
15 difficulty in social, occupational and/or school functioning.
16         As I said before, Dr. Patil placed the GAF at 50 in
17 July of 2013.  So on balance and having considered the lack
18 of squarely contradictory medical opinion evidence of a
19 consultative exam, or otherwise, I think Dr. Patil's -- the
20 rejection of Dr. Patil's opinion or giving it little weight
21 is not supported by substantial evidence.
22         I've also looked very carefully at this entire
23 record, the history of this case, which dates back to 2009.
24 In my view there is persuasive evidence that plaintiff is
25 disabled and unable to work within the meaning of the Social

1  Security Act.
2         So I grant judgment on the pleadings to the
3  plaintiff.  I will remand with a directed finding of
4  disability for the sole purpose of calculating benefits owed
5  to the plaintiff.
6         And let me commend both of you.  I thank you for
7  excellent presentations.  This was an interesting case.  Have
8  a good day.
9                  *           *           *

C E R T I F I C A T I O N

     I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter